UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ELENA DINVERNO**, *an individual*,

    Plaintiff,

vs.

**ROCHESTER COMMUNITY SCHOOLS DISTRICT**, *a government entity*, **KRISTIN BULL,** *in her individual and official capacity*, **DR. ROBERT SHANER**, *in his individual and official capacity,*

    Defendants.

Case No.  21-cv
Hon.
Mag.

---

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff Elena Dinverno, by and through her attorneys Deborah Gordon Law, complains against Defendants as follows:

1

## JURISDICTION AND VENUE

1. This is a civil rights action brought under the First Amendment to the United States Constitution and 42 U.S.C. § 1983, challenging Defendants' restriction on Plaintiff's right to freedom of speech.

2. This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on the Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3. Venue is proper under 28 U.S.C. § 1391 because all Defendants reside in this district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

4. Plaintiff Elena Dinverno is a resident of Rochester Hills, Michigan.

5. Defendant Rochester Community Schools District is a government entity administered by the Board of Education and the Superintendent.

6. Kristin Bull is President of the Board of Education. She is also an editor and director of program content for Crain's Detroit Business.

7. Dr. Robert Shaner is Superintendent of Rochester Community Schools District. In June 2020, he was appointed to Governor Gretchen Whitmer's COVID-19 Return to Learn Advisory Council which provides recommendations to the Governor's office pertaining to statewide school closings during the pandemic.

## STATEMENT OF FACTS

8. Ms. Dinverno and her family live in Rochester Hills, Michigan. Her two children began attending schools within Rochester Community Schools District ("RCS") in 2013.

9. Beginning in 2019, Ms. Dinverno worked as the marketing director for Blake's Hard Cider Co. in Armada, Michigan. Blake's Hard Cider Co. is a family-owned craft cidery. Andrew Blake is the company's president and Marty Blake is the company's Chief Financial Officer.

10. In April 2020, pursuant to Governor Whitmer's executive orders, public schools were closed for the remainder of the school year due to the COVID-19 pandemic.

11. Over the course of the summer, a thoughtful and reasonable debate ensued among parents of RCS students regarding the reopening of schools. Members of the community used Facebook groups to voice their opinions and advocate for their preferred course of action for the 2020/2021 school year.

12. Concerned about adverse mental health effects of remote learning on students, Ms. Dinverno began advocating for the reopening of schools, largely in two Facebook groups: "RCS Parents for In-Person Education" and "Conservative Parents for Rochester."

13. Ms. Dinverno became a vocal and effective advocate for her position. She frequently questioned and criticized the decisions of the RCS Board of Education ("BOE") through posts and comments in the Facebook groups.

14. In late July or early August of 2020, following the BOE's decision to begin the school year remotely, Ms. Dinverno posted in "RCS Parents for In-Person Education" seeking video testimonials from RCS parents and students expressing the hardships they've endured without the availability of in-person school.

15. In the fall of 2020, a member of the BOE contacted Ms. Dinverno's employer falsely claiming that Ms. Dinverno was participating in a group engaged in launching threats against the school district.

16. Ms. Dinverno later came to learn that the BOE member was Kristin Bull, President of the Board of Education.

17. During the call, Ms. Bull spoke with Marty Blake. After falsely claiming that Ms. Dinverno was part of a group that was making threats against the school district, Ms. Bull, an employee of Crain's, noted that Andrew Blake had recently been named one of Crain's Detroit Business's "40 under 40." Ms. Bull threatened to revoke the accolade, which was to be announced publicly in November, due to Ms. Dinverno's alleged conduct.

18. As a result of Ms. Bull's call to Marty Blake, Ms. Dinverno was called into a meeting with Blake's human resources manager and asked to explain her involvement.

4

Ms. Dinverno explained that she had never threatened anyone at the school district. She was told by the HR manager to watch what she was saying in the online forums.

19. Shortly thereafter, on November 6, 2020, Ms. Dinverno wrote a letter to Blake's leadership clarifying the extent of her participation in the Facebook groups. She reiterated that she had never made any threats and that her participation did not go beyond passionate, and appropriate advocacy.

20. In December 2020, Ms. Dinverno submitted a comment to the BOE through the District's online feedback portal:

> It has come to my attention that certain board members are contacting parents places of work to notify them that their behavior on the social channels they participate in is undesirable. May I remind you that we pay for your salaries with our tax dollars? And that what you are doing is against the by laws of the BOE? Every parents has the right to express their sadness, frustration, anger, as a right to freedom of speech. They have no one to speak with because the nothing is changing! If you have a problem with a particular parent please do what you tell our kids to do— go to the course. Let them tell you how they feel. By reporting parents you are risking their livelihood. Their employment. That is all they have right now. I know you all understand that kids are sad, hurting, giving up, and as parents we will go whatever is necessary for our children. Parents are hurting too. The fact that certain members of the board are trying to shut parents up because they are vocal about their pain and suffering is unacceptable. Now let me be clear—threats are unacceptable. But using our voices. Our right to free speech. Is our GOD GIVEN RIGHT. If you don't like it—then have a conversation with that parent. And maybe. Just maybe. Make a change that will impact these kids in a positive way. Dr. Shaner—I would be happy to fill you in on what I have learned about certain members of your board reporting parents to their work. Please reach out to me.

21. Shortly thereafter, RCS Superintendent Dr. Robert Shaner called Ms. Dinverno to discuss her comment. Ms. Dinverno told Dr. Shaner that her employer had been contacted by a BOE member.

22. Ms. Dinverno asked that Dr. Shaner address the BOE. Dr. Shaner told Plaintiff that there was nothing he could do. Instead, he complained to Ms. Dinverno about the advocacy Facebook groups and told her that the behavior of the parents participating in the group was wrong.

23. On December 18, 2020, Ms. Dinverno was terminated from Blake's by Andrew Blake. He told Ms. Dinverno that her position was no longer necessary. Andrew Blake praised Ms. Dinverno's performance and offered to write her a letter of recommendation. A few weeks later, Blake's posted a job opening for the same position on Linkedin.

24. Ms. Dinverno's December 2020 comment to the BOE was included in the packet of agenda items to be discussed at RCS's January BOE meeting.

25. Members of the "RCS Parents for In-Person Education" group discussed the comment's contents in the Facebook group, where Ms. Dinverno confirmed that she was terminated after her employer was contacted by a BOE member.

26. Ms. Dinverno came to learn that other parent's employers had been contacted by members of the BOE. Another parent shared with the group his belief that a BOE member had contacted his wife's employer, a neighboring public school district. She also came to learn that another parent's employer, a local police

department, was contacted about the parent's comments in the same Facebook groups and believed the call came from a BOE member.

27. On January 11, 2021, Ms. Dinverno addressed the BOE at the January Board meeting during a period reserved for public comment. Ms. Dinverno raised the issue of BOE members contacting parents' employers. Despite the BOE including Ms. Dinverno's comment in the agenda packet for the meeting, BOE Vice President Kevin Beers told Ms. Dinverno to "save it for Facebook."

28. On January 14, 2021, RCS and RCS BOE, through their attorneys Collins & Blaha, P.C., sent Ms. Dinverno a cease and desist letter.

29. The letter alleges that Ms. Dinverno's December comment submitted to the BOE and related Facebook group comments discussing the same are "false and are injurious to the Board, and threaten further injury if left uncorrected." The letter states the "[t]he District is prepared to preserve its legal rights using the tools available to it to the fullest extent of the law."

30. Since receiving the letter, Ms. Dinverno came to learn that other parents who have been critical of the BOE's decision to discontinue in-person education have received similar cease and desist letters from RCS' attorneys.

## COUNT I
### *First Amendment Retaliation*

31. Plaintiff restates and realleges the foregoing paragraphs of the complaint as though fully set forth herein.

7

32. Plaintiff exercised her First Amendment rights to free speech and to redress grievances to the fully elected public body charged with the legal duty to manage and oversee the Defendant Rochester Community Schools District.

33. Plaintiff engaged in constitutionally protected speech through her various Facebook posts and comments made throughout the fall and summer of 2020 and through her submission of comments to the BOE.

34. Defendants sought to unlawfully interfere with Ms. Dinverno's clearly established free speech rights through a series of adverse actions, including contacting her employer, threatening her employer with adverse professional ramifications if it continued to associate with Ms. Dinverno, sending Ms. Dinverno a cease and desist letter, and threatening Ms. Dinverno with a lawsuit for continued engagement in protected activity.

35. Defendants' adverse actions injured Ms. Dinverno by restraining, preventing, and impairing her right to free speech in a way likely to chill a person of ordinary firmness from propounding further lawful speech. Defendants' adverse actions further injured Ms. Dinverno by causing her to lose her employment.

36. Defendants were motivated to take these adverse actions in whole or in part because of Ms. Dinverno's constitutionally protected speech.

37. Defendants' adverse actions violated Ms. Dinverno's clearly established First and Fourteenth Amendment rights, and were unlawful in light of clearly

established law. No reasonable person would have believed otherwise, given the state of the law and Defendants' motivations. Defendants are liable under 42 U.S.C. § 1983

38. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to denial of employment opportunities; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT II
### *Monell Liability for First Amendment Retaliation*

39. Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

40. The violation of Ms. Dinverno's first amendment rights resulted from the execution of the Rochester Community Schools District's policies and customs.

41. Rochester Community Schools District maintains a widespread custom or practice of contacting employers of RCSD parents who vocally oppose the decisions of the Board of Education in an attempt to coerce, threaten, or manipulate said employers to dissociate themselves with the parents and encouraging employers to take adverse employment actions against the parents. This practice or custom is so permanent and well-established that it constitutes a policy of Rochester Community Schools District.

42. Rochester Community Schools District maintains a widespread custom or practice of threatening frivolous and meritless legal action against parents who vocally

oppose the decisions of the Board of Education through the use of cease and desist letters. This practice or custom is so permanent and well-established that it constitutes a policy of Rochester Community Schools District.

43. Rochester Community Schools District's custom or practice of contacting parents' employers is maintained with intentional, deliberate indifference to the widespread custom or usage of constitutional violations.

44. Rochester Community Schools District's custom or practice of threatening legal action against parents is maintained with intentional, deliberate indifference to the widespread custom or usage of constitutional violations.

45. Dr. Robert Shaner, by way of his position as superintendent of Rochester Community Schools District, is a person vested with final decision-making authority on behalf of Rochester Community Schools District.

46. The Board of Education is vested with final decision-making authority on behalf of Rochester Community Schools District.

47. Dr. Robert Shaner, in his final decision-making authoritative capacity, took action on behalf of Rochester Community Schools District to retaliate against Ms. Dinverno for exercising her first amendment rights. Specifically, Dr. Shaner directed, approved, and ratified the contacting and threatening of Ms. Dinverno's employer, and directed, approved, and ratified the execution of a cease and desist letter threatening improper legal action against Ms. Dinverno. Dr. Shaner acted with an illegal, improper retaliatory motivation.

48. The Board of Education, in its final decision-making authoritative capacity, took action on behalf of Rochester Community Schools District to retaliate against Ms. Dinverno for exercising her first amendment rights. Specifically, the Board of Education directed or approved the contacting and threatening of Ms. Dinverno's employer and directed and approved the execution of a cease and desist letter threatening improper legal action against Ms. Dinverno. The Board of Education, through the majority of its members, acted with an illegal, improper retaliatory motivation.

49. Defendants' adverse actions violated Ms. Dinverno's clearly established First and Fourteenth Amendment rights and were unlawful in light of clearly established law. No reasonable person would have believed otherwise, given the state of the law and Defendants' motivations. Defendants are liable under 42 U.S.C. § 1983.

50. As a direct and proximate result of Defendants' unlawful activity, Ms. Dinverno has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

**RELIEF REQUESTED**

Plaintiff demands judgment against Defendants as follows:

**A.  LEGAL RELIEF**

    **a.** Compensatory damages for Plaintiff's past and future economic and non-economic damages in whatever amount Plaintiff is found to be entitled;

    b.    Exemplary damages in whatever amount Plaintiff is found to be entitled;

    c.    Liquidated damages in whatever amount Plaintiff is found to be entitled;

    d.    An award of interest, costs, reasonable attorney fees, and expert witness fees;

    e.    Any other legal relief this Court deems fair and just.

**B.**    **EQUITABLE RELIEF**

    a.    An injunction from this Court prohibiting any further acts of wrongdoing or retaliation against Plaintiff;

    b.    A declaratory judgment that Defendants have violated Plaintiff's First Amendment rights; and

    c.    Whatever equitable relief appears appropriate at the time of final judgment.

Respectfully submitted,

Dated: May 3, 2021    **DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com

## **JURY DEMAND**

Plaintiff Elena Dinverno, by and through her attorneys Deborah Gordon Law, demands a trial by jury of all the issues in this cause that are so triable.

    Respectfully submitted,

Dated:  May 3, 2021    **DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com