UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ELENA DINVERNO**, *an individual*,

    Plaintiff,

vs.

**ROCHESTER COMMUNITY SCHOOLS DISTRICT**, *a government entity*, **KRISTIN BULL,** *in her individual and official capacity*, **DR. ROBERT SHANER**, *in his individual and official capacity,* **DEBRA FRAGOMENI**, *in her individual and official capacity*,

    Defendants.

Case No.   21-cv-11001
Hon. Mark A. Goldsmith
Mag. Kimberly G. Altman

| | |
|---|---|
| **DEBORAH GORDON LAW** | **PLUNKETT COONEY** |
| Deborah L. Gordon (P27058) | Courtney L. Nichols (P75160) |
| Elizabeth Marzotto Taylor (P82061) | Attorney for Defendants |
| Sarah Gordon Thomas (P83935) | 38505 Woodward Avenue, Suite 100 |
| Molly Savage (P84472) | Bloomfield Hills, Michigan 48304 |
| Attorneys for Plaintiff | (248) 594-6460 |
| 33 Bloomfield Hills Parkway, Suite 220 | cnichols@plunkettcooney.com |
| Bloomfield Hills, Michigan 48304 | |
| (248) 258-2500 | |
| dgordon@deborahgordonlaw.com | |
| emarzottotaylor@deborahgordonlaw.com | |
| sthomas@deborahgordonlaw.com | |
| msavage@deborahgordonlaw.com | |

# PLAINTIFF'S SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Elena Dinverno, by and through her attorneys Deborah Gordon Law, complains against Defendants as follows:

## JURISDICTION AND VENUE

1. This is a civil rights action brought under the First Amendment to the United States Constitution and 42 U.S.C. § 1983, challenging Defendants' restriction on Plaintiff's right to freedom of speech.

2. This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on the Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3. Venue is proper under 28 U.S.C. § 1391 because all Defendants reside in this district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

4. Plaintiff Elena Dinverno is a resident of Rochester Hills, Michigan.

5. Defendant Rochester Community Schools District is a government entity administered by the Board of Education and the Superintendent.

6. Kristin Bull is President of the Board of Education. She is also an editor and director of program content for Crain's Detroit Business.

7. Dr. Robert Shaner is Superintendent of Rochester Community Schools District.

8. Debra Fragomeni is a Deputy Superintendent at Rochester Community Schools District.

## STATEMENT OF FACTS

9. Elena Dinverno and her family live in Rochester Hills, Michigan. Her two children began attending schools within Rochester Community Schools District ("RCS") in 2013.

10. In April 2020, pursuant to Governor Whitmer's executive orders, public schools were closed for the remainder of the 2019-2020 school year due to the COVID-19 pandemic.

11. Over the course of 2020, a thoughtful and reasonable debate ensued among parents of RCS students regarding the reopening of schools. Members of the community used Facebook groups to voice their opinions and advocate for their preferred course of action for the 2020-2021 school year.

12. Concerned about adverse mental health effects of long-term remote learning on students, Ms. Dinverno began advocating for the reopening of schools, largely in two Facebook groups: "RCS Parents for In-Person Education" and "Conservative Parents for Rochester."

13. Ms. Dinverno became a vocal and effective advocate for her position. She frequently questioned and criticized the decisions of the RCS Board of Education ("BOE") and expressed her opinion on reopening schools through posts and comments in the Facebook groups.

14. After March 1, 2020, RCS administration began monitoring, documenting and collecting the social media activity of parents in the district who the administration believed were "protesters."

15. RCS administration monitored Facebook groups started by and comprised of parents in the district, including private Facebook groups. RCS administration also monitored the personal Facebook profiles of parents in the district

16. RCS did not advise parents or the community that their speech was being closely monitored and documented.

17. Amy DiCresce, RCS's Public Affairs Specialist, and Lori Grein, RCS's Executive Director of Strategic Communications, were assigned to regularly capture screenshots of district parents' social media posts and comments which criticized the school district and to compile dossiers of the screenshots, which were circulated to members of RCS administration and BOE members.

18. The dossiers frequently included DiCresce and Grein's annotations containing personal information about district parents such as their place of employment, the names of their children and which schools their children attended.

19. Around November 5, 2020, Ms. Dinverno, through a post in a private parent Facebook group, sought video testimonials from parents and students in the district describing their experiences with remote learning in light of the pandemic. The testimonials were to be shared with the BOE and/or district administration.

20. On November 5, 2020, DiCresce sent an email to Grein regarding Ms. Dinverno's post. The email, with the subject line "children in distress," states "Once again, they are calling for videos of kids in distress. I know parents are giving permission for this, but can't we supersede in protecting these poor kids?"

21. DiCresce included in her email personal information regarding Ms. Dinverno such as: her full name, her Facebook profile name, the names of her children, her personal email address, and two phone numbers.

22. DiCresce's email concludes "She's the marketing director for Blake's Hard Cider."

23. This email was forwarded to Shaner, Fragomeni and Bull.

24. Beginning in August 2019, Ms. Dinverno worked as the marketing director for Blake's Hard Cider Co., owned and operated by the Blake family.

25. At all times relevant herein, Marty Blake was part-owner of Blake's Hard Cider Co. Marty Blake's 32-year-old nephew, Andrew Blake, was President of Blake's Hard Cider Co at all times relevant herein.

26. On November 6, 2020, Fragomeni placed a call to Plaintiff's employer, the Blake family.

27. After speaking with Sandra Blake, the wife of Blake's owner Marty Blake, Fragomeni then spoke to Marty Blake.

4

28. Fragomeni falsely told Marty Blake that Ms. Dinverno's social media advocacy and criticism of the school district was alarming, threatening and posed a danger to the district and the students' well-being.

29. Fragomeni also falsely told Marty Blake that Ms. Divnerno had referred to her position at Blake's Hard Cider in the course of her online criticism of the school district and was portraying her personal opinion on the reopening of schools as Blake's Hard Cider's position.

30. Fragomeni told Marty Blake that Ms. Dinverno was "soliciting children under distress" and that she was concerned that Ms. Dinverno's advocacy would negatively impact his daughter Andrea, a teacher at RCS.

31. The next day Marty Blake directed Robert Sharpe, COO of Blake's to address these issues with Ms. Dinverno. Blake's HR manager Stacy Sunde, then called Ms. Dinverno in for a meeting on the same day.

32. Sunde told Ms. Dinverno that Marty Blake had been contacted by someone from the "BOE" regarding Ms. Dinverno's social media posts about the district and warned Ms. Dinverno that she needed to watch what she was saying online. Ms. Dinverno explained that she never made any threats in any Facebook group and that her advocacy regarding the district was appropriate and respectful.

33. During the meeting, Ms. Dinverno and Sunde also discussed the upcoming Crain's "40 Under 40" award ceremony which was to occur in approximately 10 days. President Andrew Blake was one of Crain's honorees. Based on the

5

information given to her by Sunde and Bull's business relationship with Blake's, through her role with Crain's, Ms. Dinverno believed that it was Bull who had called Marty Blake earlier that day.

34. On November 6, 2020, Ms. Dinverno wrote to Blake's leadership confirming that she was aware that they had been contacted as to her speech in the "RCS Parents for In Person Education" Facebook group. She reiterated that she had never made any threats and that her participation did not go beyond passionate, and appropriate advocacy.

35. Ms. Dinverno also advised that she was removing all posts associated with the Facebook group and did so.

36. On November 10, 2020, Ms. Dinverno followed up with Sunde and asked to know more about what was said on November 6th to Marty Blake.

37. Sunde responded "I am only aware that the school board connected you as a [senior] management member of Blake's with a parent group they deemed was hostile towards them."

38. On December 12, 2020, Ms. Dinverno submitted a comment to the BOE and RCS administration through the District's online feedback portal:

> It has come to my attention that certain board members are contacting parents places of work to notify them that their behavior on the social channels they participate in is undesirable. May I remind you that we pay for your salaries with our tax dollars? And that what you are doing is against the by laws of the BOE? Every parents has the right to express their sadness, frustration, anger, as a right to freedom of speech. They have no one to speak with because the nothing is changing! If you have a

problem with a particular parent please do what you tell our kids to do—go to the course. Let them tell you how they feel. By reporting parents you are risking their livelihood. Their employment. That is all they have right now. I know you all understand that kids are sad, hurting, giving up, and as parents we will go whatever is necessary for our children. Parents are hurting too. The fact that certain members of the board are trying to shut parents up because they are vocal about their pain and suffering is unacceptable. Now let me be clear—threats are unacceptable. But using our voices. Our right to free speech. Is our GOD GIVEN RIGHT. If you don't like it—then have a conversation with that parent. And maybe. Just maybe. Make a change that will impact these kids in a positive way. Dr. Shaner—I would be happy to fill you in on what I have learned about certain members of your board reporting parents to their work. Please reach out to me.

39. Ms. Dinverno's comment was received by Dr. Shaner, Fragomeni, Bull, and the entire BOE.

40. As of December 13, 2020, Dr. Shaner, Bull, and all BOE members came to learn that it was Fragomeni who had called Ms. Dinverno's employer, and not a member of the BOE.

41. No one from the BOE or administration told Plaintiff that it was not a member of the BOE who had called her employer; rather, it was the Deputy Superintendent.

42. Around December 15, 2020, Dr. Shaner called Ms. Dinverno to discuss her December 12th comment to the district. Ms. Dinverno asked that Dr. Shaner address the BOE. Dr. Shaner, with actual knowledge that his deputy superintendent had contacted Blake's, told Ms. Dinverno that there was nothing he could do. Instead,

he complained to Ms. Dinverno about the advocacy Facebook groups and told her that the behavior of the parents participating in the group was wrong.

43. On the early morning of December 18, 2020, Ms. Dinverno was abruptly terminated from Blake's, effective immediately. Andrew Blake told Ms. Dinverno that her position was no longer necessary. He praised Ms. Dinverno's performance and offered to write her a letter of recommendation. A few weeks later, Blake's posted a job opening for the same position on Linkedin.

44. Roughly three hours after Ms. Dinverno's termination on December 18, 2020, Bull responded via email to Ms. Dinverno's December 12th communication to the district. Bull, who was aware that Fragomeni had called Ms. Dinverno's employer, stated "I can assure you, on behalf of the Board of Education, that none of us have ever or would think to reach out to the employers of our district parents related to anything posted on social media."

45. Bull falsely stated, "We don't actively monitor social media."

46. Ms. Dinverno replied later that day, reiterating that contacting parents' employers was inappropriate behavior for a school district.

47. Other parents' employers were also contacted by someone from the district. Another parent shared with the group his belief that a BOE member had contacted his wife's employer, a neighboring public school district.

48. Dr. Shaner, himself, contacted the employer of another parent, to complain about the parent's posts.

49. On or around January 3, 2021, Dr. Shaner took a personal leave of absence. During that time, Fragomeni took over Dr. Shaner's duties as Superintendent.

50. On January 11, 2021, hours before the BOE meeting that night, Grein sent approximately 165 pages of screenshots from district parents' social media activity to Fragomeni and Bull. Many of the screenshots contained discussion between parents regarding Ms. Dinverno's December 12th comment.

51. At the January 11, 2021 BOE meeting, Ms. Dinverno addressed the BOE during a period reserved for public comment. Ms. Dinverno attempted to discuss the fact that someone from the district had contacted her employer. Despite the fact that the entire BOE knew that Fragomeni had in fact contacted Ms. Dinverno's employer, BOE Vice President Kevin Beers told Ms. Dinverno to "save it for Facebook." Again, the BOE and the administration hid the fact that the Assistant Superintendent had called Plaintiff's employer.

52. On January 14, 2021, RCS and the RCS BOE, through their attorneys Collins & Blaha, P.C., sent Ms. Dinverno a "cease and desist" letter regarding her December 12th comment submitted to the BOE through its feedback portal and her comments in the Facebook group discussing the same.

53. Collins & Blaha, P.C. was directed by Dr. Shaner and Fragomeni to issue the cease and desist letter, which includes Fragomeni as a "cc."

54. The letter opens by advising Ms. Dinverno "to cease making public false statements about the Board, Board members, and the District."

9

55. The letter chastises Ms. Dinverno for stating that "no BOE should contact an employer"; for confirming that a BOE member contacted the employer of a parent; for posting comments that "spurred a discussion" which included negative comments about the BOE; for her "furtherance of Facebook conversations"; and for "promotion of this idea" that the BOE talked to employers.

56. The BOE, Dr. Shaner and Fragomeni knew that Plaintiff's employer had been contacted by the district.

57. The letter states that "[t]he District is prepared to preserve its legal rights using the tools available to it to the fullest extent of the law."

58. At least two other parents who have been critical of RCS's response to the pandemic have received similar cease and desist letters from RCS' attorneys.

59. One parent was sent two cease and desist letters on behalf of the district and the BOE between January and March of 2021 because the parent "publicly and falsely suggest[ed] that a Board member may be engaged in an ongoing financial conflict of interest" and that the parent "appear[ed] to have done so as part of an attempt to intimidate Board members to adopt a policy position [the parent] prefer[red]."

60. Another parent requested an apology from the district after Dr. Shaner sent police to her home based on his mistaken belief that she had submitted a written threat to the district. The district responded to the request for an apology by sending the parent a letter from Collins & Blaha, P.C. threatening to "if necessary, make full use of its available legal and equitable remedies."

61.  Plaintiff's complaint was filed on May 3, 2021.

62.  Plaintiff alleged that Kristin Bull had contacted Plaintiff's employer.

63.  With the knowledge that Plaintiff's employer had been called by Fragomeni, not Bull, Defendants and their counsel kept this information hidden.

64.  It was not until the deposition of Marty Blake on November 5, 2021, that Plaintiff learned that her employer had been contacted, but by the Deputy Superintendent, not the "BOE."

65.  Defendants intentionally deceived Plaintiff and the public.

## COUNT I
### *First Amendment Retaliation*

66.  Plaintiff restates and realleges the foregoing paragraphs of the complaint as though fully set forth herein.

67.  Plaintiff exercised her First Amendment rights to free speech and to redress grievances to the fully elected public body charged with the legal duty to manage and oversee the Defendant Rochester Community Schools District.

68.  Plaintiff engaged in constitutionally protected speech through her various Facebook posts and comments made throughout the fall and summer of 2020 and through her submission of comments to the BOE.

69.  Defendants sought to unlawfully interfere with Plaintiff's clearly established free speech rights through a series of adverse actions, including contacting her employer, falsely telling Plaintiff's employer that she was engaged in conduct that

11

was threatening or hostile to the district, sending Plaintiff a cease and desist letter, and threatening Plaintiff with a lawsuit for continued engagement in protected activity.

70. Defendants' adverse actions injured Plaintiff by restraining, preventing, and impairing her right to free speech in a way likely to chill a person of ordinary firmness from propounding further lawful speech. Defendants' adverse actions further injured Plaintiff by causing her to lose her employment.

71. Defendants were motivated to take these adverse actions in whole or in part because of Plaintiff's constitutionally protected speech.

72. Defendants' adverse actions violated Plaintiff's clearly established First and Fourteenth Amendment rights, and were unlawful in light of clearly established law. No reasonable person would have believed otherwise, given the state of the law and Defendants' motivations. Defendants are liable under 42 U.S.C. § 1983

73. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including but not limited to denial of employment opportunities; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## COUNT II
### *Monell Liability for First Amendment Retaliation*

74. Plaintiff repeats and realleges the foregoing paragraphs as if they were fully set forth herein.

75. The violation of Plaintiff's first amendment rights resulted from the execution of the Rochester Community Schools District's policies and customs.

76. Rochester Community Schools District maintains a widespread custom or practice of contacting employers of RCS parents who vocally oppose the decisions of the school district and/or the Board of Education in an attempt to coerce, threaten, or manipulate said employers to dissociate themselves with the parents and encouraging employers to take adverse employment actions against the parents. This practice or custom is so permanent and well-established that it constitutes a policy of Rochester Community Schools District.

77. Rochester Community Schools District maintains a widespread custom or practice of threatening frivolous and meritless legal action against parents who vocally oppose the decisions of the district and/or Board of Education through the use of cease and desist letters. This practice or custom is so permanent and well-established that it constitutes a policy of Rochester Community Schools District.

78. Rochester Community Schools District's custom or practice of contacting parents' employers is maintained with intentional, deliberate indifference to the widespread custom or usage of constitutional violations.

79. Rochester Community Schools District's custom or practice of threatening legal action against parents is maintained with intentional, deliberate indifference to the widespread custom or usage of constitutional violations.

80. Dr. Robert Shaner, by way of his position as superintendent of Rochester Community Schools District, is a person vested with final decision-making authority on behalf of Rochester Community Schools District.

81. At relevant times, Fragomeni was a person vested with final decision-making authority on behalf of Rochester Community Schools District.

82. At relevant times, Bull was a person vested with final decision-making authority on behalf of Rochester Community Schools District.

83. The Board of Education is vested with final decision-making authority on behalf of Rochester Community Schools District.

84. Dr. Robert Shaner, Fragomeni, and Bull, in their final decision-making authoritative capacity, took action on behalf of Rochester Community Schools District to retaliate against Plaintiff for exercising her first amendment rights. Specifically, Dr. Shaner, Fragomeni, and Bull directed, approved, and ratified the contacting and threatening of Plaintiff employer for the purpose of disseminating falsehoods about her, and directed, approved, and ratified the execution of a cease and desist letter threatening improper legal action against Plaintiff. Dr. Shaner, Fragomeni, and Bull acted with an illegal, improper retaliatory motivation.

85. The Board of Education, in its final decision-making authoritative capacity, took action on behalf of Rochester Community Schools District to retaliate against Plaintiff for exercising her first amendment rights. Specifically, the Board of Education directed or approved the contacting and threatening of Plaintiff's employer

for the purpose of disseminating falsehoods about her, and directed and approved the execution of a cease and desist letter threatening improper legal action against Plaintiff. The Board of Education, through the majority of its members, acted with an illegal, improper retaliatory motivation.

86. Defendants' adverse actions violated Plaintiff's clearly established First and Fourteenth Amendment rights and were unlawful in light of clearly established law. No reasonable person would have believed otherwise, given the state of the law and Defendants' motivations. Defendants are liable under 42 U.S.C. § 1983.

87. As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

## RELIEF REQUESTED

Plaintiff demands judgment against Defendants as follows:

**A.** **LEGAL RELIEF**

    **a.** Compensatory damages for Plaintiff's past and future economic and non-economic damages in whatever amount Plaintiff is found to be entitled;

    **b.** Exemplary damages in whatever amount Plaintiff is found to be entitled;

    **c.** Liquidated damages in whatever amount Plaintiff is found to be entitled;

    **d.** Punitive damages in whatever amount Plaintiff is found to be entitled;

  **e.**  An award of interest, costs, reasonable attorney fees, and expert witness fees; and

  **f.**  Any other legal relief this Court deems fair and just.

**B.**  **EQUITABLE RELIEF**

  **a.**  An injunction from this Court prohibiting any further acts of wrongdoing or retaliation against Plaintiff;

  **b.**  A declaratory judgment that Defendants have violated Plaintiff's First Amendment rights; and

  **c.**  Whatever equitable relief appears appropriate at the time of final judgment.

            Respectfully submitted,

Dated:  February 16, 2022    **DEBORAH GORDON LAW**
            /s/Deborah L. Gordon (P27058)
            Elizabeth Marzotto Taylor (P82061)
            Sarah Gordon Thomas (P83935)
            Molly Savage (P84472)
            Attorneys for Plaintiff
            33 Bloomfield Hills Parkway, Suite 220
            Bloomfield Hills Michigan 48304
            (248) 258-2500
            dgordon@deborahgordonlaw.com
            emarzottotaylor@deborahgordonlaw.com
            sthomas@deborahgordonlaw.com
            msavage@deborahgordonlaw.com

## JURY DEMAND

Plaintiff Elena Dinverno, by and through her attorneys Deborah Gordon Law, demands a trial by jury of all the issues in this cause that are so triable.

Respectfully submitted,

Dated: February 16, 2022  **DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2022, I electronically filed the foregoing document, Plaintiff's Second Amended Complaint, with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com